UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EAGLE NUMBER THREE LLC,

    Plaintiff/Counter-Defendant,

v.

KONICA MINOLTA HOLDINGS
U.S.A., INC.,

    Defendant/Counter-Claimant.
_____/

Case No. 1:12-cv-158

HON. JANET T. NEFF

**OPINION**

Plaintiff/Counter-Defendant Eagle Number Three LLC ("Eagle Three") filed this breach of contract action alleging that in December 2011 Defendant/Counter-Claimant Konica Minolta Holdings U.S.A., Inc. ("Konica Minolta") wrongfully terminated a ten-year lease with Eagle Three for commercial office space in Grand Rapids, Michigan, the term of which did not expire until December 2016.[1]  Konica Minolta filed a counter-claim for unjust enrichment based on a January 4, 2012 wire transfer of $28,799.15 for January 2012 rent, claiming it was a mistaken payment because Konica Minolta vacated the subject premises before December 31, 2011.

Pending before the Court is Konica Minolta's Motion for Partial Summary Judgment (Dkt 40), seeking a determination that Konica Minolta possessed the right to terminate the lease anytime after five years pursuant to Paragraph 37 of the Lease Agreement.  Eagle Three has filed a Response (Dkt 41), and Konica Minolta has filed a Reply (Dkt 42).  Having fully considered the parties' briefs

---

[1] Eagle Three filed this action in state court, and Konica Minolta removed the case to this Court pursuant to 28 U.S.C. § 1332(a) based on diversity jurisdiction.

and the record, the Court concludes that oral argument is unnecessary to resolve the pending motion. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court grants the motion.

I. Background Facts

On September 15, 2006, Eagle Three and Konica Minolta entered into a lease for approximately 21,176 square feet of office space on the third floor of a building at 5800 Foremost Drive, S.E.,[2] at a cost of approximately $25,587.67 per month ("Lease or "Lease Agreement," Compl. Ex. A, ¶ 2; Counter-cl., Dkt 5, Ex. 2 ¶¶ 7-8). The term of the Lease began December 15, 2006 (JSUF ¶ 4). An Amendment to the original Lease was signed about the same time, on September 16, 2006 ("Amendment"), obligating Eagle Three to use its best efforts to obtain a certificate of occupancy within 90 days (Compl. ¶ 9; Amend., Dkt 1-1 at 29).

According to the Complaint, the Lease required Eagle Three to perform substantial physical improvements to the tenancy prior to occupancy by Konica Minolta, and Konica Minolta understood that Eagle Three had to refinance the Building in order to obtain the financing for the improvements (Compl. ¶¶ 8, 10). Eagle Three alleges that as an inducement for it to obtain and Fifth Third Bank to provide such financing, Konica Minolta agreed to and later executed on January 31, 2007, a Tenant's Estoppel Certificate (Compl., Ex. C, herein also "Estoppel Agreement") and a Subordination/Non-Disturbance Agreement (SNDA) (*id.*, Ex. D), whereby Konica Minolta acknowledged that the term of the Lease would run until December 14, 2016 (Term), and that Konica Minolta would not exercise any right to terminate the Lease prior to the expiration of the Term (Compl. ¶ 11). Eagle Three alleges that together, the Lease, Amendment, Tenant's Estoppel

---

[2]The parties' Joint Statement of Uncontroverted Facts (JSUF) (Dkt 40-3), ¶ 1, identifies the lease location as 5600 Foremost Drive; however, the Lease Agreement and numerous documentary exhibits clearly identify the property as located at 5800 Foremost Drive.

Certificate, and SNDA constituted the parties' contract/lease regarding the tenancy, with the latter two documents superseding any inconsistent provisions in the former two (*id.* ¶ 12).

Eagle Three alleges that no written notice of termination or cancellation of the Lease has been provided by Konica Minolta, and the Lease remains in effect through its Term (Compl. ¶ 14). Nonetheless, on September 7, 2011, Konica Minolta sent Eagle Three an e-mail indicating that it was terminating the Lease effective December 14, 2011 (*id.* ¶ 15). Eagle Three further alleges that Konica Minolta was obligated to pay the monthly rent for the period December 15, 2011 to January 14, 2012 by December 15, 2011, but that Konica Minolta had a practice of paying the monthly rent via electronic transfer by the 4th of each calendar month (being approximately 19 days after the due date) (*id.* ¶ 17). Eagle Three alleges that it is entitled to accelerate all installments of rent payable under the Lease for the balance of the Term in the amount of $1,889,825, plus a late charge of 5% of the accelerated amount ($94,491.25), interest at the rate of 24% per annum ($37,796.50 per month), previous rent increases that were never paid, and costs and attorneys fees incurred to enforce the Lease (*id.* ¶¶ 21-22). Additionally, Eagle Three claims it is entitled to consequential damages resulting from Eagle Three's failure to meet the terms of its lender's financing for the Building, which may include, but is not limited to, penalties, higher interest rates, additional refinancing costs, foreclosure of the Building, attorneys fees and other costs (*id.* ¶ 23).

In its Counter-claim, Konica Minolta alleges that pursuant to the terms of the Lease, it had the right to terminate the Lease at any point after the expiration of the first five years, with at least six months written notice (Counter-cl. ¶ 9, citing Lease ¶ 37). If Eagle Three was unable to re-lease the premises within twelve months of Konica Minolta vacating, Konica Minolta would be obligated to pay Eagle Three $165,745.45 for the unamortized tenant improvements (*id.* ¶ 10). Further, on or

about December 14, 2010, Konica Minolta hand-delivered to Eagle Three a notice indicating Konica Minolta's intent to invoke the Lease Agreement's termination provisions and to vacate the building on or before December 31, 2011 (*id.* ¶ 12). Konica Minolta vacated the lease premises before December 31, 2011 (*id.* ¶ 14).

## II. Legal Standard

A moving party is entitled to a grant of its motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.,* 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of City of Zanesville,* 463 F.3d 569, 572 (6th Cir. 2006)).

The moving party has the initial burden of showing there is no dispute regarding any genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.,* 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson,* 477 U.S. at 248). "A genuine dispute concerns evidence 'upon which a reasonable jury could return a verdict in favor of the non-moving party.' A factual dispute is material only if it could affect the outcome of the suit under the governing law." *Fuhr v. Hazel Park Sch. Dist.,* 710 F.3d 668, 673 (6th Cir. 2013) (quoting *Tysinger*, 463 F.3d at 572). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.,* 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson,* 477 U.S. at 251-52).

4

III. Analysis

A. *Lease Agreement*

The parties' primary dispute concerns the interpretation of Paragraph 37 of the Lease and Konica Minolta's right to terminate the lease prior to its full ten-year term. Paragraph 37 provides:

> **37. Termination.** Tenant has the right to terminate the Lease after five (5) years, with at least six (6) months written notice and, if required after twelve months, as set forth below, the payment of $165,745.45 for the unamortized tenant improvements (see attached Exhibit "E"). Tenant shall not have to make this payment unless the Landlord has not released the space within twelve (12) months of the Tenant vacating the premises. If the Landlord has released the space within twelve (12) months of the Tenant vacating the space, then the Tenant shall owe the Landlord for the Tenant improvements necessary for the new tenant to move into the Suite, up to $165,745.45.

Konica Minolta contends that the plain language of Paragraph 37 clearly and unequivocally states that Konica Minolta may terminate the Lease at any time after the expiration of the first five years of the lease, so long as it provides Eagle Three notice at least six months prior to termination, and pays the specified amount for unamortized improvements if Eagle Three is unable to find a substitute tenant within twelve months.[3] The Court agrees.

The parties do not dispute that this case is governed by Michigan law. *See Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Capital, Inc.*, 274 F.3d 1085, 1092 (6th Cir. 2001) (the substantive law of Michigan applies in a diversity action in a matter filed in a Michigan district court). Under Michigan law, the primary goal in construing a contract "is to ascertain and enforce the intent of the parties." *Id.* (citing *Rasheed v. Chrysler Corp.*, 517 N.W.2d 19, 29 n.28 (Mich. 1994); *Sobczak v. Kotwicki*, 79 N.W.2d 471, 475 (Mich. 1956)). However, a fundamental tenet of

---

[3]Konica Minolta states that on December 13, 2012, it paid Eagle Three the sum of $136,946.30 for such unamortized improvements, which was the full amount due under the Lease minus the mistaken January 2012 rent payment of $28,799.15.

5

Michigan jurisprudence is that "unambiguous contracts are not open to judicial construction and must be *enforced as written*." Rory v. Continental Ins. Co., 703 N.W.2d 23, 30 (Mich. 2005) (footnote omitted). "Courts enforce contracts according to their unambiguous terms because doing so respects the freedom of individuals freely to arrange their affairs via contract." Id.

As written, the plain language of the lease states that Konica Minolta has the unqualified right to terminate the Lease after five years, with at least six (6) months written notice. Contrary to Eagle Three's arguments, there is nothing ambiguous about this contract language. "A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation." Gortney v. Norfolk & Western Ry. Co., 549 N.W.2d 612, 615 (Mich. Ct. App. 1996).

The Court is not persuaded by Eagle Three's contention that the term "after" in Paragraph 37 is a "broad term" that can reasonably be read to mean (1) "any time" after five years, as Konica Minolta argues, or (2) "immediately" after five years, as Eagle Three argues. The plain meaning of the word "after" cannot be ignored to adopt the additional restriction sought by Eagle Three. Contract language must be construed according to its plain and ordinary meaning, and technical or strained constructions are to be avoided. *UAW-GM Human Resource Ctr. v. KSL Recreation Corp.,* 579 N.W.2d 411, 414 (Mich. Ct. App. 1998); s*ee also Wright v. DaimlerChrysler Corp.,* 220 F. Supp. 2d 832, 843 (E.D. Mich. 2002).[4] The Lease states simply that Konica Minolta has the right to terminate it **after** five years. The clear language of the Lease does not support Eagle Three's contention that Konica Minolta held only a **one-time right** to terminate the Lease early after the fifth anniversary of the Lease.

---

[4]In the same sense, if the language were "before" five years, one could not reasonably interpret the lease to mean the lease must be terminated "immediately" before five years, which is clearly a strained construction as opposed to simply "any time" before.

Because the Court does not find Eagle Three's proposed construction reasonable, the Court need not resort to further rules of contract construction to resolve the parties' dispute.[5] The Court is obligated to constrain its analysis to the contract document itself:

> "We must look for the intent of the parties in the words used in the instrument. This court does not have the right to make a different contract for the parties or to look to extrinsic testimony to determine their intent when the words used by them are clear and unambiguous and have a definite meaning." [*Sheldon-Seatz, Inc. v. Coles,* 319 Mich. 401, 406-407, 29 N.W.2d 832 (1947), quoting *Michigan Chandelier Co. v. Morse,* 297 Mich. 41, 49, 297 N.W. 64 (1941).]

*UAW-GM Human Resource Ctr.,* 579 N.W.2d at 414; *see also Royal Prop. Group, LLC v. Prime Ins. Syndicate, Inc.,* 706 N.W.2d 426, 432 (Mich. Ct. App. 2005) (the language of the contract is the best means of determining the parties' intent). "[U]nambiguous contracts are not open to judicial construction and must be *enforced as written*." *Rory,* 703 N.W.2d at 30.

Even if the Court were to consider the extrinsic evidence cited by Eagle Three, the Court does not find that such evidence supports Eagle Three's construction of the Lease. Eagle Three cites testimony of Konica Minolta's President, Stephen Schuster, who signed the Lease, and Jan Bomers, Konica Minolta's real estate agent, which Eagle Three contends does not support Konica Minolta's interpretation of Paragraph 37, but instead is consistent with Eagle Three's interpretation that early termination was a one-time option that had to be exercised or was lost. Eagle Three argues that this interpretation is further supported by the fixed amount set for the 60-month lease termination, $165,745.45, which only makes sense if the "kick-out" is exercised at the 60-month mark. However,

---

[5]For instance, although the parties devote much argument to the issue of which party drafted Paragraph 37 for purposes of construing the language against the drafter, they acknowledge that this rule of contract construction is a tie-breaking interpretive rule that applies only when the language is ambiguous and relevant extrinsic evidence cannot resolve the issue. *See Wilkie v. Auto-Owners Ins. Co.,* 664 N.W.2d 776, 782 (Mich. 2003); *Klapp v. United Ins. Group Agency, Inc.,* 663 N.W.2d 447, 455 (Mich. 2003).

7

Schuster conceded that his interpretation was based on his understanding, but not the language of Paragraph 37, which is not necessarily consistent with Schuster's recollection (Schuster Dep., Dkt 42, Ex. B at 41-43). And the mere fact that the parties' final negotiations for the five-year termination right in the Lease did not include prorated payment amounts for termination in the sixth through tenth years, in and of itself, is of little import since the record indicates that Eagle Three advertised a ten-year lease, but Konica Minolta was specifically focused on obligating itself to no more than a five-year lease. In any event, "extrinsic evidence is not the best way to determine what the parties intended. Rather, the language of the parties' contract is the best way to determine what the parties intended." *Klapp v. United Ins. Group Agency, Inc.,* 663 N.W.2d 447, 457 (Mich. 2003).

Accordingly, the Court rejects Eagle Three's argument that Paragraph 37 gave Konica Minolta only a one-time right to early termination, to be exercised immediately after the 60th month of the Lease, and required Konica Minolta to give written notice of its intent to exercise that right before June 16, 2011. Here, the language is straightforward and permits termination of the Lease after five years, i.e., after December 14, 2011.

B. *Fifth Third Bank Documents*

Eagle Three argues that Konica Minolta agreed not to exercise its Paragraph 37 early termination right in two documents signed with Fifth Third Bank after execution of the Lease Agreement: (1) the Tenant's Estoppel Certificate; and (2) the SNDA. Konica Minolta contends that these documents did not modify or restrict its termination right in the Lease Agreement. The Court concludes that the Fifth Third Bank documents do not alter the terms of Paragraph 37, and more specifically, Konica Minolta's right to terminate the lease after five years.

8

Eagle Three argues that Paragraph 3 of the Estoppel Agreement defines the term of the Lease to be ten years, and the SNDA notes that the provisions of the Lease "as modified by this Agreement" are incorporated by reference (*see* SNDA ¶ 6), which together, in effect, trump Konica Minolta's termination rights under the Lease Agreement. That is, although Konica Minolta's rights under Lease did not change *per se*, Konica Minolta was "subordinating and foreswearing certain rights to induce [Eagle Three's financing from Fifth Third]" (Eagle Three's Resp., Dkt 41 at 13). Thus, Paragraph 9 of the SNDA was included precisely because Konica Minolta possessed early termination rights under the lease (*id.* at 15).

Eagle Three's argument is not supported by the documents themselves or the record otherwise. First, Paragraph 3 of the Estoppel Agreement, defining the term of the Lease to be ten years, does not add weight to Eagle Three's contentions. That paragraph provides:

> The expiration date of the current term of the Lease (be it the original lease term or a renewal term) is 12/14/2016. Following said expiration date, Tenant has available to it under the Lease two renewal terms of five years each.

(Estoppel Ag., Compl. Ex. C, Dkt 1-1 at 31) This language is merely consistent with the Lease Agreement, the term of which was stated as ten years,[6] and which also provided Konica Minolta the option to renew the lease for two periods of five years (Lease ¶ 36). It cannot be read to supersede Konica Minolta's express termination rights under the Lease Agreement. Furthermore, the Estoppel Agreement expressly states that "[t]he Lease has not been modified, altered, amended or supplemented …." (Estoppel Ag. ¶ 4).

---

[6]"This Lease shall be for a term commencing on the Completion Date, and terminating 120 months thereafter (the 'Expiration Date') except as referenced in paragraph 37" (Lease ¶ 3).

Second, Eagle Three's reliance on Paragraph 9 of the SNDA is of no avail. That provision is also consistent with the terms of the Lease Agreement and does not provide that Konica Minolta is foregoing any rights under the Lease:

> **9. TENANT'S REMEDIES UNDER LEASE/NOTICE TO LENDER.** Tenant agrees that is obligated to pay the rent and other amounts specified under the Lease and will not terminate the Lease prior to expiration of its term, or any extensions or renewals thereof, except upon occurrence of a default under the terms of the Lease by the "landlord" thereunder ("Landlord") and failure by Landlord or Lender to cure any such default within thirty (30) days after notice of such default is delivered by Tenant to Landlord <u>and Lender</u> (provided that in the event any such default cannot, with due diligence, be cured within such 30-day period, then Landlord and Lender shall have an additional period to cure such default as is reasonable under the circumstances, but only so long as Landlord or Lender diligently pursues such cure).

(Compl., Ex. D, Dkt 1-1 at 54)

Nothing in Paragraph 9 states, or can be reasonably read, to contradict the express terms of Paragraph 37 of the parties' Lease Agreement that provides Konica Minolta the right to terminate the lease after five years upon payment of the amount due for the unamortized tenant improvements, up to $165,745.45. Eagle Three's arguments to the contrary are unpersuasive.

## IV. Conclusion

For the foregoing reasons, the Court determines that pursuant to Paragraph 37 of the Lease Agreement, Konica Minolta possessed the right to terminate the Lease Agreement at any point after the expiration of the first five years of the Lease Term, with proper notice, and that right was not modified or restricted by subsequent documents executed by the parties, including the Tenant's Estoppel Certificate and SNDA. Accordingly, Konica Minolta's Motion for Partial Summary Judgment (Dkt 40) is granted.

An Order will be entered consistent with this Opinion.


Dated: July 11, 2013                              /s/ Janet T. Neff
                                                  JANET T. NEFF
                                                  United States District Judge